J-S04029-16 & J-S04030-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.P., H.H., L.H., MINOR CHILDREN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.K., MOTHER, | : | |
| | : | No. 1119 WDA 2015 |

Appeal from the Order June 24, 2015
in the Court of Common Pleas of Washington County,
Orphans' Court Division, No(s): 63-14-1501, 63-14-1502, 63-14-1503

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.P., H.H., L.H., MINOR CHILDREN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.K., MOTHER, | : | |
| | : | No. 1120 WDA 2015 |

Appeal from the Order June 24, 2015
in the Court of Common Pleas of Washington County,
Orphans' Court Division, No(s): 63-14-1501, 63-14-1502, 63-14-1503

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.P., H.H., L.H., MINOR CHILDREN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.K., MOTHER, | : | |
| | : | No. 1121 WDA 2015 |

J-S04029-16 & J-S04030-16

Appeal from the Order entered June 24, 2015
in the Court of Common Pleas of Washington County,
Orphans' Court Division, No(s): 63-14-1501, 63-14-1502, 63-14-1503

| | | |
|---|---|---|
| IN RE: ADOPTION OF: H.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.H., JR., FATHER, | : | |
| | : | No. 1122 WDA 2015 |

Appeal from the Order entered June 24, 2015
in the Court of Common Pleas of Washington County,
Orphans' Court Division, No(s): 63-14-1503

| | | |
|---|---|---|
| IN RE: ADOPTION OF: L.H., MINOR CHILD | : | IN THE SUPERIOR COURT OF |
| | : | |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.H., JR., FATHER, | : | |
| | : | No. 1123 WDA 2015 |

Appeal from the Order entered June 24, 2015
in the Court of Common Pleas of Washington County,
Orphans' Court Division, No(s): 63-14-1501

BEFORE:  BOWES, OLSON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY OLSON, J.:  **FILED FEBRUARY 12, 2016**

K.K. ("Mother") appeals from the orders entered on June 24, 2015,

granting the petitions filed by the Washington County Children and Youth

---

[*] Retired Senior Judge specially assigned to the Superior Court.

- 2 -

Social Service Agency ("CYS" or the "Agency") to involuntarily terminate her parental rights to her three dependent, special needs children, A.P., a male born in August of 2006; H.H., a female born in August of 2011; and L.H., a male born in April of 2014 (collectively, "the Children"), pursuant to Section 2511(a)(1), (2), (5), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b).[1]  A.H., Jr., ("Father"), is the father of H.H. and L.H.  He appeals the orders entered on June 24, 2015 terminating his parental rights to his two children.[2]  We affirm.

The trial court set forth the relevant history of this case in its Pa.R.A.P. 1925(a) opinion and the earlier opinion that accompanied its termination orders.  **See** Trial Court Opinion, 9/1/2015, at 1-5; Trial Court Opinion, 6/24/2015 at 1-4.  We adopt the trial court's recitation of the facts for purposes of these appeals.

---

[1] The trial court noted it voluntarily terminated the parental rights of A.P., the natural father of the child, A.P., on April 1, 2015.  Trial Court Opinion, 9/1/2015, at 1 n.1 *citing* N.T., 4/1/2015, at 11.  A.P.'s natural father is not a party to the current appeals.

[2] On July 28, 2015, this Court, acting *sua sponte*, consolidated Mother's three appeals with regard to the termination of her parental rights to the Children.  On August 12, 2015, we, *sua sponte*, consolidated Father's two appeals with regard to the termination of his parental rights to his children, H.H. and L.H., and listed his appeals to be decided consecutively with Mother's appeal.  The trial court discussed all of the appeals in a single opinion entered June 24, 2015 that accompanied the termination orders, and in a single opinion filed pursuant to Pa.R.A.P. 1925(a) on September 1, 2015.  We shall likewise review these matters in a single memorandum for ease of disposition.

The trial court held an evidentiary hearing on the termination petitions on April 1, 2015, April 8, 2015, and May 27, 2015. Father was absent from the first day of the hearing on April 1, 2015, as he had just begun an inpatient addiction treatment program at the Pyramid facility in Altoona, Pennsylvania. Trial Court Opinion, 9/1/2015, at 3, *citing* N.T., 4/1/2015, at 5, 314. Shortly before the second day of the termination hearing, Father completed a detoxification program at Altoona Hospital, and was late in arriving at the hearing. **Id.** at 3, *citing* N.T., 4/8/2015, at 320. Father testified on cross-examination conducted by counsel for CYS and Mother's counsel.

On April 13, 2015, between the second and third days of the termination hearing, however, Father overdosed on heroin in a park while with Mother, a friend, and the friend's children.[3] **Id.** at 3, *citing* N.T., 4/13/2015, at 416. Father was absent from the third day of the hearing as he was admitted to an inpatient facility, Cove Forge Behavioral Health Systems, for drug and alcohol rehabilitation. **See id.** at 3, *citing* N.T., 5/27/2015, at 396; Trial Court Opinion, 6/24/2015, at 3. Father's counsel explained that Father would be treated in an inpatient facility for 20 days and Father expected to be discharged on June 5, 2015. N.T., 5/27/2015, at 396-397, 430-431. The trial court admitted Father's letter concerning his

---

[3] Father admits that he did overdose on heroin between detoxification and his admittance into rehabilitation. **See** Father's Brief, at 13.

inpatient treatment as Father's Exhibit A. *Id*. at 430-431; Father's Exhibit A. Father did not present any witnesses at the third day of the hearing.

After the trial court entered its termination orders, with an accompanying opinion on June 24, 2015, Mother and Father timely filed notices of appeal along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), on July 20, 2015 and July 22, 2015, respectively.

In his brief on appeal, Father raises three questions for this Court's review, as follows:

> I. Whether the trial court improperly terminated Father's parental rights when evidence was presented that by the time of the hearing in the termination of parental rights matter Father was making significant efforts to rehabilitate himself and had taken additional steps to demonstrate the performance of parental duties and efforts to remedy the conditions which led to the removal of [H.H. and L.H.] [?]
>
> II. Whether the trial court improperly terminated Father's parental rights when evidence was presented that Father has a close bond with [H.H. and L.H.] and that [H.H. and L.H.] would suffer detrimental harm if the parent-child bond were severed[?]
>
> III. Whether the trial court erred in refusing to continue the hearings in the termination of parental rights matter when Father was a patient in an inpatient rehabilitation facility and was unable to attend and present his case[?]

Father's Brief, at 4.

In her brief on appeal, Mother raises one question for this Court's review, as follows:

> I. Whether the trial court improperly terminated Mother's parental rights when evidence was presented that Mother has a close bond with her children and that the [C]hildren would suffer detrimental harm if the parent-child bond were severed[?]

Mother's Brief, at 6.[4]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.**; **R.I.S.**, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. **Id.**; **see also Samuel Bassett v. Kia Motors America, Inc.**, 34 A.3d 1, 51 (Pa. 2011); **Christianson v. Ely**, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**
>
> As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often

---

[4] Mother's challenge is limited to the application of 23 Pa.C.S.A. § 2511(b). We address this issue in the latter part of this memorandum, in conjunction with Father's Section 2511(b) claim.

the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.***, *quoting* ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated the parental rights of Mother and Father under Section 2511(a)(1), (2), (5), and (b). ***See*** Trial Court Opinion, 9/1/2015, at 1. Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(1), (2), and (5).

This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but, under Section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). We will focus on subsection 2511(a)(2), and adopt

the trial court's discussion in its opinion as this Court's own.[5]  **See** Trial Court Opinion, 9/1/2015, at 6-10.

Our Supreme Court set forth our inquiry under Section 2511(a)(2) as follows:

> [Section] 2511(a)(2) provides [the] statutory ground[] for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .
>
> [Our Supreme Court] has addressed incapacity sufficient for termination under § 2511(a)(2):
>
> > A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity.  The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

**In re Adoption of S.P.**, 47 A.3d at 827 (internal citations omitted).

---

[5] The trial court relied on its discussion of the facts in relation to Section 2511(a)(1) to support its analysis under Section 2511(a)(2).  Mother waived any challenge to Section 2511(a) and the subsections thereof by failing to challenge that section in her concise statements and brief.  **See Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).  We, nevertheless, would find sufficient evidence to support the trial court's termination of her parental rights under Section 2511(a)(2).  **See** Trial Court Opinion, 9/1/2015, at 9-10.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

The trial court found that the repeated and continued incapacity, abuse, neglect or refusal of Mother and Father has caused the Children to be without essential parental care, control or subsistence necessary for their physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by Mother and Father. *See* Trial Court Opinion, 9/1/2015, at 8-9.

Specifically, with regard to Father, the trial court stated:

> The condition that led to Father's lack of parenting ability, [] Father's incapacity and neglect, is drug addiction. [] Father clearly will not remedy this condition. [H.H. and L.H.] have been removed for almost a year and he remains an active user, with an overdose five days after a termination hearing in which he was claiming he was seeking treatment and not using drugs. The evidence was overwhelming that Father has been a continuous and active user for the entire lives of H.H. and L.H. He was not in meaningful mental health treatment and had no suitable place to reside with the children.

*Id.* at 9.

Father contends that the trial court abused its discretion and erred as a matter of law in terminating his parental rights because the trial court

- 10 -

failed to recognize his significant efforts, both before and during the termination proceedings, to overcome his addiction to drugs and alcohol, and to remedy a major condition that necessitated the removal of H.H and L.H. Father's Brief, at 8. Father testified at the second day of the hearing in the termination matter that he was waiting for a bed to become available at either Gateway or Greenbriar treatment facilities, so that he could be admitted at either of those locations for inpatient drug and alcohol addiction rehabilitation. Father's Brief, at 11, *citing* N.T., 4/8/2015, at 318. On the third day of the termination hearing on May 27, 2015, Father had been admitted to Cove Forge for inpatient rehabilitation, so he was not present. *Id.* at 11-12.

Father complains that, in its 1925(a) opinion, the trial court stated that Father did not make significant efforts to rehabilitate himself, but, rather, was continuing in the "downward spiral of placing his need and desire to get high over the needs of his children for a clean and sober and appropriate parent." Father's Brief at 12, *citing* Trial Court Opinion, 9/1/2015, at 13. Father claims that the trial court's characterization of his addiction ignored the serious issue of addiction in our society, in which the "issue of heroin addiction is well documented in the high number of overdoses on almost a daily basis." Father's Brief at 12. Father alleges that his efforts by the conclusion of the termination proceedings demonstrate that he had taken significant steps to remedy the condition that necessitated the removal of

H.H. and L.H., established that he is dedicated to living a clean and sober life, and showed that he is an appropriate parent for H.H. and L.H.. *Id.* at 13.

In his related third issue, Father complains that the trial court improperly denied his counsel's requests for a continuance on the first and the third days of the termination hearing. Father states that he was in inpatient rehabilitation on those dates, and that, as a result, the court denied him the ability to effectively present his case. Father's Brief, at 18.

In its 1925(a) opinion, the trial court explained that Father checked into inpatient treatment on the first day of the termination hearing, and did not contact his counsel to assist him. Trial Court Opinion, 9/1/2015, at 13. Father's counsel requested a continuance on the first day of the hearing, which the trial court denied. *Id.* Father did not seek a continuance of the second day of the hearing; rather he attended the second day, but appeared late to court. *Id.* Father did not arrange to attend the third day of the hearing and Father's counsel did not seek a continuance. *Id.* at 13-14.

Our review of the certified record supports the trial court's determination that, when Father was not present at the first day of the hearing, his counsel requested a continuance because Father was in inpatient rehabilitation and unable to attend. N.T., 4/1/2015, at 5. The trial court denied the request, but stated that it would provide Father an opportunity to be heard. *Id.* at 9. Father was present at the second day of

the hearing on April 8, 2015, and was cross-examined by counsel for CYS and Mother's counsel.

On the third day of the hearing, Father was not present, but his counsel explained that Father had been admitted to an inpatient treatment facility. N.T., 5/27/2015, at 396-397, 430, 436. Father's counsel did not request a continuance at the commencement of the third day of the termination hearing. Mother's counsel indicated he would move for a continuance because Father's counsel needed to contact Father. N.T., 5/27/2015, at 396. However, when the trial court further questioned counsel about Father's absence, Father's counsel responded he could not "get a straight answer on that." *Id.* at 397. The trial court denied the request for a continuance made by Mother's attorney. *Id.* at 398. In its subsequent opinion, the trial court explained its basis for denying Father's request for a continuance on the first day of the termination hearing. Specifically, the trial court found that Father checked himself into treatment on the first day of the termination hearing even though the hearing was set for over 90 days. Moreover, Father did not contact his attorney to assist him but contacted Mother who relayed the information to Father's attorney on the first day of the termination hearing. Trial Court Opinion, 9/1/2015, at 13. The grant or denial of a motion for continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. *Commonwealth v. Antidormi*, 84 A.3d 736, 745 (Pa.

Super. 2014), *appeal denied*, 84 A.3d 736 (Pa. 2014). "An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record." ***Id.*** Here, the record supports the basis for the trial court denying Father's request for a continuance on the first day of the evidentiary hearing. Therefore we do not find an abuse of discretion. Because Father failed to request a continuance on the third day of the hearing, he waived this aspect of his claim.

Moreover, we find the trial court did not deny Father's due process rights, despite being absent on the first and third days of the hearing. "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." ***In re J.N.F.***, 887 A.2d 775, 781 (Pa. Super. 2005). "Due process is flexible and calls for such procedural protections as the situation demands." ***In re Adoption of Dale A., II***, 683 A.2d 297, 300 (Pa. Super. 1996), *citing* ***Mathews v. Eldridge***, 424 U.S. 319, 334, (1976). Father had notice and an opportunity to be heard, and he had counsel to represent him at the termination hearing. Accordingly, we reject Father's third issue.

Finally, we find there was sufficient evidence to support the trial court's termination of Father's parental rights under Section 2511(a)(2),

even absent the trial court's consideration of Father's overdose after the second day of the hearing. As the trial court noted, and as the record supports, Father did not have suitable housing, he had no source of income, he tested positive for opiates throughout the case, he was not performing any parental duties, he failed to show any responsibility for H.H.'s and L.H.'s mental and physical issues, he had no meaningful mental health treatment and he has been a drug addict throughout the lives of H.H. and L.H. Trial Court Opinion, 9/1/2015, at 7-9. Father alleges, however, that following the termination proceedings he successfully completed 27 days of rehabilitation at Cove Forge on June 10, 2015. *See* Father's Brief, at 12 n.1. We may not consider this proffered evidence, because we are limited to a review of the certified record. *Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*). Thus, there was no evidence before the trial court that Father had successfully completed drug rehabilitation treatment.

Based upon the foregoing, there was ample evidence to support the trial court's determination that Father failed to make sufficient progress to parent H.H. and L.H. successfully. As the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's orders with regard to subsection (a)(2). *In re Adoption of S.P.*, 47 A.3d at 826-27.

Next, we review the termination of the parental rights of Father and Mother under Section 2511(b), which provides:

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

> Regarding Section 2511(b), our Supreme Court recently stated:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Father contends that the trial court erred in finding a lack of a bond and/or an unhealthy bond between Father and H.H. and L.H., and that the termination of such a bond would not be detrimental to H.H. and L.H. He

- 16 -

asserts that CYS presented contradictory and incomplete evidence regarding the bond between H.H. and L.H. and Father. Father's Brief, at 8. Mother similarly argues that the trial court improperly terminated her parental rights when she established that the Children would suffer harm from the severance of the parent-child bond. Mother's Brief, at 10-17. We find that their arguments lack merit.

We have stated that, in conducting a bonding analysis, the trial court may rely on the testimony of social workers and caseworkers; expert testimony is not required. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court also observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). It is appropriate to consider a child's bond with his or her foster parent. *See In re: T.S.M.*, 71 A.3d at 268.

In addition, our Supreme Court has set forth the process for evaluating existing bonds between a parent and a child, with a focus on examining unhealthy attachments and the availability of adoptive homes, as follows:

> [C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to his biological parent, especially considering the existence or lack thereof of bonds to a pre-adoptive family. As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best

- 17 -

interests and the needs and welfare of the particular children involved. ***See, e.g., R.J.T.***, [9 A.3d 1179, 1190 (Pa. 2010)] (holding that statutory criteria of whether child has been in care for fifteen of the prior twenty-two months should not be viewed as a "litmus test" but rather as merely one of many factors in considering goal change). Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

[The Adoption and Safe Families Act of 1997, P.L. 105-89] ASFA[,] was enacted to combat the problem of foster care drift, where children . . . are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children. ***See In re R.J.T.***, 9 A.3d at 1186; ***In re Adoption of S.E.G.***, [901 A.2d 1017, 1019 (Pa. 2006)]. This drift was the unfortunate byproduct of the system's focus on reuniting children with their biological parents, even in situations where it was clear that the parents would be unable to parent in any reasonable period of time. Following ASFA, Pennsylvania adopted a dual focus of reunification and adoption, with the goal of finding permanency for children in less than two years, absent compelling reasons. ***See*** 42 Pa.C.S.A. § 6301(b)(1); 42 Pa.C.S.A. § 6351(f)(9) (requiring courts to determine whether an agency has filed a termination of parental rights petition if the child has been in placement for fifteen of the last twenty-two months).

***In re: T.S.M.***, 71 A.3d at 268-269.

As we have repeatedly stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." ***In re Z.P.***, 994 A.2d at 1125. Rather, "a

parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004).

In evaluating Section 2511(b), the trial court determined:

> The evidence established that the oldest [child], A.P., is strongly attached to his [caregiving] grandmother. She is the only stable force in his life. While he has a bond with [] [M]other, the need for permanency must also be considered. Because of the child's age and placement with a relative, continued contact between [A.H.] and [] Mother will likely continue. Thus, any grief as a result of terminating the bond is lessened. The need for permanency for A.P. is also strong and can only be offered by his grandmother and outweighs the benefit of a bond with [] Mother. As to L.H., he lived with his parents for only two weeks before he was placed with his current caregivers. There was no evidence of a bond between the parents and L.H. While the parents visit with him, very little physical interaction occurs as he often remained in his car seat and watched. No negative effects would befall L.H. if the relationship with his parents was severed. He is bonded to the foster parents. As to H.H., [the trial court] found that H.H. had a bond with her parents, with a greater bond with [] Mother than with [] Father. However, the bond with the parents was not necessarily a healthy one. The parents deprived the child with needed psychological and social interaction. […]Prolonged therapy will be necessary for her well-being. […] They made no attempt to understand the child's serious issues with food. The bond with her foster parents is a healthy one. She is in placement with her younger sibling, with whom she is bonded. The child's need for permanence was also considered. The [trial court found] that while the severance of the bond will have a detrimental effect, that effect will be minimal and will be outweighed by the permanence it provides. The Guardian *ad litem* supports the termination of parental rights.

- 19 -

Trial Court Opinion, 9/1/2015, at 9-10.

Again, the record supports the trial court's factual findings regarding the Children's need for permanency and their lack of a healthy bond with the parents. The Commonwealth presented sufficient testimony of unhealthy bonds between the Children and both parents from various CYS caseworkers and social workers. The court's legal conclusions with regard to the Children are not the result of an error of law or an abuse of discretion. Thus, we affirm the trial court's Section 2511(b) needs and welfare and bond-effect analysis based on the trial court's September 1, 2015 opinion, as recited above. ***Id.***; ***see also In re Adoption of S.P.***, 47 A.3d at 826-827.

Because we have adopted the trial court's opinions entered on June 24, 2015 and September 1, 2015, we direct the parties to include those opinions (with Mother's, Father's, and the Children's names redacted) in all future filings relating to our examination of the merits of this appeal, as expressed herein.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2016